United States District Court
for the
Southern District of New York

| | |
|---|---|
| DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC | ) ) ) ) |
| Plaintiff | ) |
| v. | ) |
| | ) ) |
| DIANNE MORAN | ) ) |
| Defendant(s) | ) ) |

Civil Action No. **19-cv-2264**

**COMPLAINT**

The Plaintiff, by its attorneys Gross Polowy, LLC, for its complaint against the Defendant allege as follows:

## INTRODUCTION

1.      This action is brought pursuant to New York Real Property Actions and Proceeding Law (RPAPL) Article 13, to foreclose a Mortgage encumbering 22 Elmsford Road, a/k/a 5 Talmadge Road, Kent, NY 10512, together with the land, buildings, and other improvements located on the Property ("Property").  The legal description of the Property is attached as Schedule B.

## PARTIES

2.      Plaintiff is a Limited Liability Company incorporated under the laws of the State of Delaware with its principal place of business at 1100 Virginia Drive, Suite 100A, Fort Washington, PA 19034. Plaintiff's members are Walter Management Holding Company LLC and Green Tree Servicing Corporation which are both incorporated under the laws of the State of Delaware with their principal office in the State of Pennsylvania. Walter Management Holding Company LLC's sole member is Green Tree Credit Solutions LLC which is incorporated in under the laws of the State of Delaware and with its principal office in the State of Pennsylvania. Green Tree Credit Solutions LLC's sole member is Ditech Holding Corporation which is incorporated in under the laws of the State of Maryland with its principal place of business in the State of Pennsylvania.   Plaintiff is the holder of the subject Note and Mortgage with delegated authority to institute this Mortgage foreclosure action by the owner.  Attached here as Schedule A is a copy of the original note.

3.      Defendant Dianne Moran is a citizen of New York, and the owner of the Property. The Defendant holds an ownership interest in the Property that is subject and subordinate to Plaintiff's Mortgage.

## STATEMENT OF JURISDICTION

4.      Federal subject matter jurisdiction exists pursuant to 28 USC §1332 because complete diversity exists among the Plaintiff and the Defendant and the amount in controversy, without interest and costs, exceeds the $75,000.00.

## VENUE

5.      Venue is proper pursuant to 28 USC §1391 because the Property is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

6.      On or about February 2, 2007, Dianne Moran executed and delivered a Note whereby Dianne Moran promised to pay the sum of $161,000.00 plus interest on the unpaid amount due.

7.      As security for the payment of the Note Dianne Moran duly executed and delivered a Mortgage, in the amount of $161,000.00 which was recorded as follows.
Recording Date: March 7, 2007
Book 5046/Page 148
Putnam County Clerk

8.      The Mortgage was subsequently assigned to Green Tree Servicing LLC. Ditech Financial LLC was formerly known as Green Tree Servicing LLC.

9.      The Note and Mortgage were modified by a Loan Modification Agreement executed by Dianne Moran on January 28, 2015 and recorded June 11, 2015 in Book 6489, Page 98 in the Office of the Putnam County Clerk.

10.      Dianne Moran failed to make payment in accordance with the terms of the Note and Mortgage, as modified by the Loan Modification Agreement, by not making the payment that was due on August 1, 2017 and subsequent payments.

11.      There is now due and owing on the Note and Mortgage the following amounts:
Principal Balance: $138,615.22
Interest Rate: 2%
Date Interest Accrues from: July 1, 2017
together with late charges, monies advanced for taxes, assessments, insurance, maintenance, and preservation of the Property, and the costs, allowances, expenses of sale, and reasonable attorney's fees for the foreclosure.  The interest rate stated above may change in accordance with the adjustable rate feature of the Note.

12.      In order to protect the value of the Property and its rights in the Property, the

Plaintiff may have to pay taxes, assessments, water charges, insurance premiums, and other charges. Plaintiff requests that any amount it pays, together with interest, be included in the total amount due.

13.    Plaintiff has complied with the notice provision of the Mortgage and RPAPL Section 1304 and filed the information required by RPAPL Section 1306. The Mortgage was originated in compliance with all provisions of Section 595-a of the New York Banking Law and any rules or regulations promulgated thereunder, and, if applicable, Sections 6-l or 6-m of the Banking Law.

14.    No action was brought to recover any part of the Mortgage debt or if any such action is pending final judgment for Plaintiff was not rendered and it is the intent of the Plaintiff to discontinue it.

**WHEREFORE, PLAINTIFF DEMANDS**:

a.  Judgment accelerating the maturity of the debt and determining the amount due Plaintiff for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the Property and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest;

b.  A referee be appointed to sell the Property at auction to the highest bidder, in accordance with to RPAPL Article 13;

c.  The interest of the defendant and all persons claiming by or through them be foreclosed and their title, right, claim, lien, interest or equity of redemption to the Property be forever extinguished;

d.  The Plaintiff be paid out of the sale proceeds the amounts due for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the Property, and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest, and that the sale proceeds be distributed in accordance with to RPAPL Article 13;

e.  The property be sold in as is condition, subject to the facts an inspection or accurate survey of the Property would disclose, covenants, restrictions, easements and public utility agreements of record, building and zoning ordinances and violations, and the equity of redemption of the United States of America;

f.  Plaintiff may purchase the Property at the sale;

g.  A receiver be appointed for the Property, if requested by Plaintiff;

h.  A deficiency judgment against Dianne Moran, to the extent allowable by law, for the amount that remains due after distribution of the sale proceeds, unless the debt was discharged in a bankruptcy or is otherwise uncollectable, be granted if requested by Plaintiff;

   i.  If the Plaintiff possesses other liens against the Property, they not merge with the Mortgage being foreclosed and that Plaintiff, as a subordinate lien holder, be allowed to share in any surplus proceeds resulting from the sale;

   j.  That the Court award Plaintiff additional relief that is just, equitable and proper.


Dated: December 12, 2018
      Westbury, New York

By:
/SJV/
Stephen J Vargas, Esq.
Attorneys for Plaintiff
900 Merchants Concourse, Suite 412
Westbury, New York 11590-5114
Tel.: (716)204-1700

## <u>Schedule A</u>

Attached hereto as Schedule A is a copy of the original note. If applicable, certain non-public personal information has been redacted from the attached document.

# NOTE

**FEBRUARY 02, 2007**
[Date]

**WILLIAMSVILLE**
[City]

**NEW YORK**
[State]

22 ELMSFORD ROAD, KENT, NY  10512
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $     161,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION                                              .

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     5.625     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the     1st     day of each month beginning on     APRIL, 2007     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     MARCH 01, 2037     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

603 NORTH WILMOT ROAD, TUCSON, AZ  85711                     or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $     926.81     .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Initials: _____

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP-5N(NY) (0003)

Page 1 of 3

Form 3233 1/01

LENDER SUPPORT SYSTEMS, INC. 5NNY.NEW (02/03)

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of            15         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be            2.000         % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Initials: _____

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated

, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
DIANNE MORAN                   -Borrower                                  -Borrower

_____ (Seal)      _____ (Seal)
                               -Borrower                                  -Borrower

_____ (Seal)      _____ (Seal)
                               -Borrower                                  -Borrower

_____ (Seal)      _____ (Seal)
                               -Borrower                                  -Borrower

# A L L O N G E

ADDENDUM TO NOTE DATED **February 02, 2007** IN THE AMOUNT OF ***$161,000.00*** BETWEEN ***FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION*** AND **Dianne Moran** WHOSE ADDRESS IS **22 Elmsford Road, Kent, NY 10512** *WHOSE* LOAN NUMBER IS ▮▮▮▮▮

**WITHOUT RECOURSE**
**Pay to the order of** **CITI MORTGAGE INC**

FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

By:_____    OR   By:_____
   **EMILY VONDRAK**                 **JOHN BENGE**
   **SENIOR VICE PRESIDENT**      **WAREHOUSE MANAGER**
   **OF OPERATRIONS**

Pay to the order of
_____
without recourse on us
CitiMortgage, Inc.
Frank Myers, Sr. Vice President
CitiMortgage, Inc.

**<u>Schedule B – Legal Description</u>**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Kent, County of Putnam and State of New York, and described as follows to wit:

Lots Nos. 3486, 3487, 3488, 3489, 3490, 3491, 3492 and 3493 as designated and delineated on the maps entitled, Third Map of Lake Carmel, Town of Kent, Putnam County, New York, and filed in the Putnam County Clerk's Office on the 2nd day of February, 1931 as Map No. 130-B8.